18358.  Good morning, Your Honors. My name is Wei Gu. It's an honor to be here today to present my case. I'm here for Mr. Gao, the appellant. He's a Chinese national who applied for asylum in the United States. His case was denied at the agency level all the way until the a number of inconsistent statements, plus a demeanor finding. That's correct. I'm going to address those issues. Out of the inconsistent statements, well, there are six real inconsistent statements. One is about the time, the length that he was in this Christian group before he was arrested in China. Second was the reason he started this Christian group while he attended some sort of Christian church before that, and later on he started his own Christian group, and the reasons why he started was inconsistent. Second was there are some omissions as to the statement he made during testimony. Before we get to the inconsistent statements, so there's the adverse demeanor finding, right? And you don't seem to challenge that. I'm challenging that too. You do challenge that. But can I just ask a question? So would it be enough for the IJ to say, I have an adverse demeanor finding, and so therefore I don't find him credible, and I want corroborating evidence for his story, even without any inconsistencies, and I don't find the corroborating evidence compelling? That would have been enough even without the inconsistencies, right? Why not? The reason is the demeanors are — well, there's great deference offered to a trial judge for demeanors. So there are issues where a judge can't observe someone, and at trial it says the person does not appear credible. However, those appearances have to be substantiated by some other evidence, and usually that is something on record stating what is — Well, that's what a demeanor finding is, right? The immigration judge sees the person's demeanor and decides that they're not testifying credibly, right? And so here, the immigration judge thinks that Mr. Gao, whenever he seems to be going beyond the confines of his written statement, can't — you know, can't speak — does not seem credible, does not — has difficulty answering questions. Well, specifically when the judge finds that sort of — not just make an observation saying the person testifying is sweating bullets or stuttering. When the immigration judge make a finding where it's about something that can be verified on record, such as the respondent didn't test — the petitioner didn't testify with — consistently according to the four corners — when it was asked about testimony beyond the four corners. In fact, when we look into the record closely, I don't see any of that. There's nothing that the — Okay. So we're going to talk about — There's nothing that was what? That was testified that was not sort of — was considered nonresponsive. The respondent — Well, what about the inconsistency? I want to address that, too, but — I mean, we don't have a case in which demeanor alone was the basis for not crediting him. It's inconsistencies plus the demeanor. So how do you deal with the inconsistencies? So the inconsistencies in this case — there are six inconsistencies. Five of them are the inconsistency that was previously discussed. The only inconsistency that was ever discussed on record was the one about the length of detention. Was it five months or six months? Right. That was the only one. Explain that, and then explain your client's explanation of why he made those inconsistent statements, because he acknowledged that those were inconsistent statements. Right. So you want me to — the five- or six-month one? Yes. Okay. So that was the one that the respondent gave an explanation on record that he was detained for six months, but he only got a paperwork that showed that he was detained for five months so that when on individual he said it was five months, but later on he said it's six months. That's the explanation that he gave, and that was the only one that was ever addressed on record from the government — from the trial attorney and from the judge. Why was the immigration judge there compelled to accept his explanation for the discrepancy between the initial statement and the testimony? There's no real reason why the judge — Why would that not then be enough as substantial evidence in support of the adverse credibility determination plus the demeanor findings? I agree the demeanor findings by themselves are not sufficient. For the inconsistencies, that's the one that was only discussed — that was only discussed ever challenged on record. Therefore, all the other inconsistencies were never discussed. The respondent never gave a chance to explain his — Why do you say that? He had an attorney. But it was never asked on record. Well, why does that matter? Because on this court in 2006, Ming-Chi Hsu v. BIA specifically said that the immigration judge should give a person on immigration proceedings a chance to explain any apparent possible inconsistencies. But there is an adverse credibility determination based on one inconsistency, right? Like, it would be enough if there was one inconsistency. If it was egregious enough, it was — But the explanation for this one and the I.J. didn't find the explanation sufficient or satisfying, right? The five, six months. It's not enough according to our standards from this court. It's just that one inconsistency is — One inconsistency. So trivial inconsistencies are not enough. But one inconsistency or two inconsistencies that go to the heart of the claim, that would suffice, correct? Well, depending on if — Well, that's a very simple statement. If an inconsistent — if a set of inconsistent statements go, or even one inconsistent statement goes to the heart of the claim for asylum, that should be enough, correct? Yeah, I — yes. Yes. May I just ask you, though, on the argument you just made about allowing him to explain — I know that our precedent says that, but should we reconsider that? I'm not sure what the reason for that is. We don't require it in a criminal trial when a party testifies inconsistently. We don't make them have to explain. We don't — we don't make it so in a civil trial. Why in this context, immigration proceedings, should there have to be an opportunity to explain? Because there are explanations that may not be apparent that would make the inconsistency not inconsistent. Right. But your client had a lawyer. To the extent that he wanted him to explain anything, just as a lawyer in a civil case or a criminal case can ask what he wants, why do we expect the I.J. to identify what he thinks is inconsistent and ask for an explanation? I — as I said, I know we've said that, but I'm trying to understand what — why we want that. What would you say is the reason we should maintain that? Your Honor, I actually don't know the answer to that. I — that's the case law I've read, and I — that's what I see. I don't — Well, how was it unfair to your client? Let's be case-specific. I mean, he had a lawyer who could have asked him to testify in greater detail about the reason why the services were held in his home or asked him to explain why he said more on one occasion than another. Why is the I.J.'s failure now a reason not to uphold his decision? Well, Your Honor, in this case, it was quite peculiar. The reason was when the case rested, in fact, it was at the end of the record — I don't remember the page number — it's on record that the department, when the — when the I.J. asked the department, what's your position on the case, the government, the trial attorney, actually said, defer to the court. And in my practice, that what means that if the I.J. were to grant the case, the I.J. would — both sides would waive appeal. And when you're looking at the case, it seems like the department, the trial attorney, really just didn't have that much of an issue. So when both sides are resting on the case, the I.J. just swispante found the — What you're suggesting is that there was no opportunity for you to — There was no opportunity. No, because the department never came up with any of the issues with the other inconsistencies, not the five and six months. So the department — his own lawyer — never had a chance to address that issue on redirect. But isn't the standard under which we're evaluating this whether there's substantial evidence for the I.J.'s determination? So — so — so isn't the question whether the record standing alone without the extra explanation or whatever constitutes substantial evidence? Yes, Your Honor. However, it's — once the — there's a finding that I.J. made an error of law, it is — and — and that error is on adverse credibility, and that adverse credibility, if or not to be found, could — But that's also substantial evidence, right? So we're supposed to uphold — you say this in your brief — we're supposed to uphold the I.J.'s adverse credibility determination unless the record compels us to conclude that no reasonable fact finder could make that determination, right? That's correct. Right. So the question is whether the record compels the opposite conclusion. Your Honor, without all the other inconsistencies, with just one inconsistency, what could be trivial and the demeanors were not — The trivialness. So, like, under the Real I.D. Act, right, the I.J.'s entitled to rely on any inconsistency, not just ones that go to the heart of the claim, right? Yes, Your Honor, but the weight is the key here. It's not that anything — well, if it's weighted at — because of all the other inconsistencies and the demeanor, then it When you say yes so quickly, are you suggesting that even the most trivial inconsistency is enough? I can't speak for all instances, but — Okay. We'll hear from — thank you. And you've reserved two minutes for rebuttal. Good morning. John Williams on behalf of the government. In this immigration case, the immigration judge, looking at the totality of the circumstances, found the petitioner lacked credibility and denied his asylum application all-related relief. The Board of Immigration, in fact, reviewed that and found and affirmed the immigration judge's decision that the petitioner lacked credibility. Mr. Williams? Yes. Would you answer Judge Radji's question, if you can, about why we asked the IJ to give asylum seekers an opportunity to explain an inconsistency? What's the rationale behind that? Well, the — I think it's to draw out information in the record to give a comprehensive case, but in this instance, the — Is that consistent with the — The government doesn't back — the government doesn't — is not backing away from that as a practice. In other words, it continues to be the government's view, as I understand it, that the IJ should give asylum seekers an opportunity to explain. Is that correct? There — when you — under this circuit — under this case's — under this circuit's case law, Majidi, that there is a — the court believes there should be an opportunity to explain, unless the inconsistency is so glaring and apparent. And when you look at — I guess my question is this. So, in the government's brief, you said that any case law that's inconsistent with the Real ID Act is no longer good law, right? Right. So, Zhu, which is the case where we said that the IJ is obliged to solicit an explanation for non-obvious contradictions, was a pre-Real ID Act case, right? Right, yeah. So, now we have the Real ID Act that comes along, and it says you can't privilege contradictions that go to the heart of the claim. You look at all contradictions under the totality of the circumstances, and so there's nothing that privileges certain contradictions, right? Right. And in Zhu, we said that when the contradiction doesn't go to the heart of the claim, there's an obligation to seek an explanation. That doesn't seem consistent with the Real ID Act, does it? No, that's — no. Right. And the Real ID Act also says that there's no presumption of credibility, right? Right, that's correct. So, if we're in a situation where there's some testimony, and it might be contradictory, but maybe there's an explanation and we're not sure, for the court to say that's not enough to arrest an adverse credibility determination on, is that affording the applicant a presumption of credibility? The — Let me ask it a different way. So, if we're under a regime where the Real ID Act tells us we cannot apply a presumption of credibility, if we're in a situation where we look at the testimony and, yeah, it seems like a contradiction, but it's not a totally obvious contradiction, and then we say, but that's not good enough, you can't arrest an adverse credibility determination on that without going back to the applicant and asking for more explanation, is that tantamount to affording a presumption of credibility? Is that inappropriate or appropriate for the court to do? I don't think that's appropriate for the court to presume that the applicant is credible. And in this situation — Your Honor, is Hongfei Gao, our case from 2018, a Real ID Act case? I'm sorry, Your Honor, would you — Hongfei Gao. You're not familiar with that? I'm not familiar with that. That's where we talked about trivial discrepancies and how they can't constitute a reason to support an adverse credibility determination. Okay. So you're not familiar with that? I'm not familiar with that, but the inconsistencies here are not trivial. There are specific and cogent reasons that the immigration judge laid out, including the length of time that the petitioner had gathered at the petitioner's house before the arrest, the reasons for gathering, the details of the arrest, as well as the length of the detention. And as you look at the record, the record supports these inconsistencies and the — One of the — The petitioner was — Mr. Williams, he said that he invoked his — maybe I've got this flipped around — but right to free speech, and later on he says he invoked his right to freedom of religion. Is that correct? That's correct. That's correct. That is certainly sort of a glaring difference in the government's view, and also goes to the heart. So we don't even have to deal with these other issues. You really don't. One — this court has found that one inconsistency is enough. And we have here, in addition to — we have overall a grouping of four inconsistencies that go to the heart of this claim. I mean — He said — In addition, we have a demeanor — we have a demeanor finding. Here in this instance, this petitioner had counsel. This was — Can I ask a question? So one is about the demeanor finding. So under the Real ID Act, the I.J. can seek corroborating evidence. So if the real — if the I.J. says, because of your demeanor, I think all of your claim — all of your testimony, even if it was consistent, requires corroboration, and therefore requiring corroborating evidence, the I.J. can do that, right? And then if the I.J. finds the corroborating evidence insufficient, then that would be enough, even without the inconsistencies, right? Yes. And so the corroborating evidence here had a lot of inconsistencies itself, right? So Pastor Kwok apparently testified or provided an affidavit that he spoke to — he never had spoken to Gao. Then he had spoken to Gao, but not about the claim. But then it turns out he doesn't speak Chinese, right? There are inconsistencies in that evidence, too. There are. There are inconsistencies in that, as well as the petitioner's wife's letter. She says that he was — that he was jailed for five months. He testified five or six months. There was also a certificate of release that was provided. That had that he was sentenced to five months. It didn't indicate whether he served any time. There was blank. Am I right, Mr. Williams — actually, I also have two questions, but am I right, first, that even if there were some errors that the I.J. committed with respect to inconsistencies and you might look at the record, for example, and understand that Mr. Gao may have either not understood — there's some ambiguity in the record, right? Yes. But even if there were some errors, if we determined that some of the inconsistent statements were, in fact, inconsistent statements, and clearly so, that would be enough? That would be enough, Your Honor. And we wouldn't have to remand? You would not have to remand. Okay. Now, you also said something that I want to follow up on. You said that a simple demeanor finding — and let me just concretize this for you. An I.J. could say that person's demeanor, based on that person's demeanor alone, I do not credit that person, even though I find no inconsistent statements. And that would be enough to support an adverse credibility determination that we would then have to, under our case law, affirm, more or less? Under the regulations, yes. And the import here is that when you look at the record closely, you can feel the frustration of not only the immigration judge, but the petitioner's own counsel, that the petitioner is not responsive throughout the record. So, they're having challenges. So, the regulations have been in existence for quite some time, correct? The real I.D. regulation, yes. And yet, we've had this case law that requires more than just a demeanor finding in order to support an adverse credibility determination. So, we've been wrong, is the government's position. The — not necessarily that the court's been wrong. The court has — the real I.D. Act came in 2005 and 2006, and so it's taken some time to implicate. This court has had a major case, the — what is it — Borovikova case that said that you only need one inconsistency to — No, that I agree with. Yes. And so, with that court — with that case, it's been very — No, I'm focused on the demeanor. I'm focused on the demeanor finding. Okay. We have not said that. No, this court has not stated that in case law, no published opinion that a demeanor finding solely could support that. We wouldn't need to say that here. No, you would not. With four inconsistencies, and overall broad four inconsistencies, as you break down the inconsistencies even within those categories, along with the demeanor — The real I.D. Act is not retroactive, right? I'm sorry? The real I.D. Act is not retroactive, right? No, it's not. Right, so we're only talking about cases that are pre-2005 conduct. So it actually takes a long time for cases to — Exactly. Has there been a case where we said — that clearly was a post-real I.D. Act case where we said a demeanor finding is not enough? I'm not aware of a case like that. However, we — the regulation — Regardless here, the I.J. didn't just rely on the demeanor finding, but required corroboration, which is another thing the I.J. can do under the real I.D. Act. Yes. It didn't find the corroboration compelling. Correct. May I ask you — you heard from my earlier question, I'm mindful that this is not a case in which demeanor alone informs the I.J.'s decision, but given your statement that demeanor alone can be the basis for it, would you view there being any difference between a case in which the I.J. said, I didn't find his demeanor credible, period, full stop, and one in which the I.J. said, I didn't find his demeanor credible? Every time he was asked a question, there was a pause, and then there was a string of words that all suggested to me that he was — you know, he had memorized a script and was just giving it back. I mean, I'm wondering whether in terms of affording us enough information to review the decision, there's a difference between those two circumstances. What's the agency's position on that? I would say there's a difference. Here, as you closely look closer and closer at the record, you will find that the immigration judge asked questions, that the petitioner's counsel on direct asked questions trying to get responses, and the petitioner was not responsive to his own attorney. And with regard to the inconsistencies, the attorney attempted to follow up. His own attorney kept trying to ask the questions. And then the immigration judge said, let's take a pause. Let's go off record. Let's come back on record and ask about the — how often did you meet? When did you start meeting at your house with regard to the gatherings after you stopped attending church? He gave one answer. But your view is that if a immigration judge said, I — with respect to this person's demeanor, I find him not credible full stop, that would not be enough? My position would be that an immigration judge, based on an adverse demeanor finding, would be enough to find — All that that judge would have to say is, this is — I just want to understand your position. This person's demeanor leads me to believe he is not credible, period. That's all that — and then that's all that we would require on the record. And that's — from the agency's perspective, that's enough. I would say that the immigration judge would need to elaborate, based on the record instances of why he believed that the individual lacked demeanor. Because we review for substantial evidence, right? Exactly. For reasons. Yes. If we would — There would have to be substantial record evidence. We can't reverse. But if there's no — if there are no reasons and there's no evidence at all, that would probably be insufficient. Correct. All right. Thank you. Thank you. Mr. Gu? I would just like to address what the last question was about, the substantial evidence in this — the judge was asking that perhaps if there's no evidence in the record indicating that the demeanor finding was present, then there should be no — it should be reversed based on that specific demeanor finding. In this particular case, I combed through the record and through the transcript, there's not a single instance in the record where the judge says, you know what, I need to ask you again. Every time the judge stopped the petitioner was — This is not a case where the I.J. didn't give a reason for the demeanor finding. So it says, the court — the I.J. says, the court finds the respondent's demeanor undermined his credibility. The court finds that at points, the respondent was nonresponsive to direct questioning, and when a question was asked, which went outside the four corners of his statement, the respondent had difficulty providing responses. Exactly. And that's what the respondent — That's the reasoning, right? And that's — He said the respondent was nonresponsive, which he was responsive to every question. He was never — It doesn't tell us, which is something the only I.J. can know, was how long did it take him to respond. He didn't seem responsive. It wasn't forthcoming in a way that seemed sincere. Or the response was not quite — the answer wasn't quite responsive to the question, which at times is part of what creates the inconsistency issue here. Your Honor, you're absolutely right. And in those situations, the I.J. usually will put on record — even the government attorney will say the respondent's not being — But that's the reason. The point is, we are not dealing with a statement that his demeanor was not credible, and we don't know why the I.J. did — thought that. We've got an explanation from the I.J., or am I missing something? Yes. You've got the — well, you have the I.J. stating that was unresponsive and was unable to answer outside the full corner of the statement, which is not apparent from the record. Because every time he was interrupted, was to repeat something, or that one specific instance where there's a pause on the record was for the I.J. to clear someone from the hallway. It wasn't — there was nothing in the record, in the transcript, indicating the I.J. was having unresponsive testimony or having some sort of soliloquy that's being put forth. So that — I don't believe the demeanor findings should stand at all. Thank you very much. We'll reserve the decision.